Lawrence N Daniels, Esq. (SBN 114275)
Lawrence Daniels Law Group, PC
101 Jefferson Drive, Suite 100
Menlo Park CA 94025
Phone: 310-444-5555; Fax: 310-444-5557
Email: lawoffices@daniels.net / triallaw@cruzio.com

Attorney for Plaintiff
Paul Rohart, MD

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL ROHART, M.D.<br><br>Plaintiff,<br><br>vs.<br><br>SAN BENITO HEALTH CARE DISTRICT; SAN BENITO HEALTH CARE DISTRICT BOARD; WILLIAM JOHNSON; DEVON PACK; JOSIE SANCHEZ; MARY CASILLAS; and DOES 1-100, inclusive,<br><br>Defendants/Petitioners. | Case No. 26-11720<br>5:26-cv-11720<br><br>**REQUEST FOR JURY TRIAL**<br><br>**DAMAGES CLAIMED OF $100.00 MILLION** |

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR:**

**(1) RETALIATION AGAINST HEALTH CARE WHISTLEBLOWER IN VIOLATION OF CALIFORNIA HEALTH AND SAFETY CODE SECTION 1278.5;**
**(2) RETALIATION AGAINST PHYSICIAN FOR REPORTING EMERGENCY CARE AND TRANSFER VIOLATIONS IN VIOLATION OF CALIFORNIA HEALTH AND SAFETY CODE SECTION 1317.4**
**(3) RETALIATION FOR PROTECTED SPEECH UNDER 42 U.S.C. § 1983;**
**(4) BREACH OF CONTRACT;**
**(5) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**
**(6) WRONGFUL TERMINATION IN VIOLATION OF CALIFORNIA PUBLIC POLICY;**
**(7) CIVIL RICO: CONDUCT OF AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY; and**
**(8) CIVIL RICO CONSPIRACY**

Plaintiff PAUL ROHART, MD, complains of Defendants SAN BENITO HEALTH CARE DISTRICT; SAN BENITO HEALTH CARE DISTRICT BOARD; WILLIAM JOHNSON; DEVON PACK; JOSIE SANCHEZ; MARY CASILLAS, on information and belief, alleges as follows:

**PARTIES**

1. Plaintiff PAUL ROHART, MD ("Dr. Rohart"), is a lifetime Board Certified (Family Medicine) physician whose residence is in the State of Florida. Dr. Rohart has earned certifications in Advance Trauma Life Support, American Association of Physician Specialties, American Board of Family Practice, American College of Emergency Physicians, American Academy of Emergency Medicine and Florida College of Emergency Physician. Dr. Rohart is licensed to practice medicine in the states of California, Florida, Hawaii and New York. Dr. Rohart has Controlled Substance Permits, DEA registration and is a recognized "Heroes of Emergency Medicine." Dr. Rohart has maintained a perfect attendance as an Emergency physician for over 28 years and has engaged, inter alia, Clinical Research in third world Emergency Medicine since 1991.

2. Defendant SAN BENITO HEALTH CARE DISTRICT ("District") is a California health care district that owns, operates, manages, and/or controls Hazel Hawkins Hospital, including its emergency department, located in San Benito County, California.

Defendant SAN BENITO HEALTH CARE DISTRICT is controlled by the defendant SAN BENITO HEALTH CARE DISTRICT BOARD ("Board" – Note: District and Board are used synonymously herein)

Defendant William Johnson is the Chair of defendant Board.

Defendant Devon Pack is the Vice Chair of defendant Board.

Defendant Josie Sanchez is a Board Member.

Defendant Mary Casillas is the Chief Executive Officer ("CEO") of defendant District.

3. At all relevant times, the District acted through its governing Board, executive management, hospital administrators, medical-staff leadership, and employees, including William Johnson, Chair, of the San Benito Health Care District Board and each and every other defendant named herein.

4. The true names and capacities, whether individual, corporate, associate or otherwise of

defendants Does 1 through 100, inclusive, are unknown to plaintiff at this time, who therefore sues said defendants by such fictitious names and when the true names and capacities of such defendants have been ascertained, plaintiff will amend this Complaint accordingly. Plaintiff is informed and believes, and thereupon alleges, that each defendant designated herein as a Doe is responsible, negligently, intentionally or in some manner, including within the ambit of the operation of a conspiracy, a fraudulent scheme and for the acts, facts, events, representations and happenings hereinafter referred to, and caused injuries and damages proximately thereby to plaintiff, as herein alleged, either through said defendants' own intentional, negligent, fraudulent or other conduct or through the conduct of their agents, servants or employees, or in some other manner, including ratification.

5. Plaintiff is informed and believes, and thereupon alleges, that at all times stated herein defendants, and each of them, were the agents, servants, employees, alter egos, joint venturers and/or conspirators of and with their co-defendants and were as such acting within the scope, course and authority of such agency, employment, joint venture and/or conspiracy, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other defendant as agent, servant, employee and/or joint venturer, including within the ambit of the operation of a conspiracy.

**JURISDICTION AND VENUE**

6. This Court has original jurisdiction over Dr. Rohart's claim arising under the First Amendment to the United States Constitution and 42 U.S.C. § 1983. Section 1983 authorizes an action for redress against a person who, under color of federal and state law, deprives a person of rights secured by the Constitution and laws of the United States.

This Court has federal-question jurisdiction because Dr. Rohart's federal claim arises under the Constitution and laws of the United States, pursuant to 28USCS, §1331.

The District is a public health care district created and operating under California law. At all relevant times, the District and its officials acted under color of California law.

7. This Court has supplemental jurisdiction over Dr. Rohart's California claims because those claims arise from the same events, decisions, and retaliatory conduct that form the basis of his federal

claim, pursuant to 28 USCS §1367.

8. This Court has personal jurisdiction over the District because the District operates, conducts business, and committed the acts and omissions alleged in this District.

9. Venue is proper in this District because a substantial part of the events and omissions giving rise to Dr. Rohart's claims occurred in this District, pursuant to 28 USCS §1391.

## FACTUAL ALLEGATIONS

10. The facts and circumstances leading up to the filing of this lawsuit can only be considered chilling and macabre in that two highly competent and qualified Emergency Room doctors who were supporting the Citizens of San Benito County with expert medical care were mistreated by unilateral employment terminations by the co-conspirator named defendants herein. Both of these Emergency Room Physicians, having great professional integrity, were placed into the position of becoming protected Whistleblowers, as set forth herein.

11. Over the period of the past few years the District, operating through its Chief Executive Officer Mary Casillas, in conspiracy with the District Board Chair, and others, have engaged the following conduct:

**Dr. Nick Gabriel**

A. Hired and then fired Dr. Nick Gabriel, a Yale trained surgeon, because Dr. Gabriel complained of operating and emergency room conditions and procedures.

B. During the course of Dr. Gabriel's tenure, he was elected by the voters to the San Benito Health Care District Board. The Board, not wanting any independent oversight hired a private investigator in a (failed) attempt to establish that Dr. Gabriel was not qualified to serve on the District Board. After this attempt failed, the Board implemented an illegal personal attendance requirement in contravention of longstanding California law (and the Brown Act) and pretextually terminated Dr. Gabriel from both its employ and Board. Despite the fact that the Board Chair, William Johnson (who has been driving the defendant Board was behind the wheel killing his wife in an at-fault drunken driving incident) violated the same illegal personal attendance "rules" imposed on Dr. Gabriel, yet defendant Johnson was not removed from the Board for violating these exact same

personal attendance “rules.” After the Board unilaterally fired Dr. Gabriel from the Board (without Dr. Gabriel’s vote) the seat became vacant and is now being filled with a 20-year Civil Grand Jury Member (and 10-year Civil Grand Jury Foreperson), Roxy Montana.

C. During the ongoing tenure of the CEO Mary Casillas, who has entered into a $450,000 golden parachute buyout contract with her co-conspirators on the Board, directed the District to file for protection under the United States Bankruptcy laws in an attempt to nullify the (Registered Nurses) National Union of Healthcare Workers (NUHW) contract so that the assets of the District-owned Hazel Hawkins Hospital could be sold to a Muslin-investment group intending to fire all the NUHW Hazel Hawkins Hospital based registered nurses and be replaced with non-union Middle Eastern nurses as a scheme to bring these less expensive nurses into the United States – and City of Hollister. Under this scheme, defendant Casillas would achieve her $450,000 golden parachute buyout.

After a several day hearing for which the District refuses to disclose how much the attorneys were paid (believed to be in the millions), United States Bankruptcy Court Judge Stephen Johnson ruled that the District was not insolvent and summarily dismissed the bankruptcy case. Judge Johnson also pointed out serious inconsistencies with the financial declarations and testimony of the participating defendants.

During these proceedings, community informational meetings organized by (former Civil Grand Jury Foreperson) Roxy Montana, the President of the San Benito Board of Supervisors appeared to speak (as a private citizen) and stated that the Board’s conduct was nothing short of a “fraud.” The San Benito County Elected District Attorney also came to a Roxy Montana-organized informational meeting and made a similar statement (also as a private citizen).

Now, the voters are to choose who is going to control the District Board in the upcoming election, e.g., either re-elect co-conspirator defendant Devon Pack, a law school graduate who has not passed (and maybe cannot pass) the California Bar Exam or Dr. Nazhat Parveen Sharma, who as a lifetime San Benito County doctor (personally blessed by Saint Mother Teresa) for the District Board seat Zone 2.

Assuming that the voters elect Dr. Sharma into the District Zone 2 Board seat, (and co-conspirator Pack out), then control of the Board will turn on the outcome of the Zone 4 election, between Paul W. Breen, Marni J. Friedman, Michael C. McGinnis and Gregory Swett. In a move clearly orchestrated by the co-conspirators (including defendants Casillas, Johnson, Pack and Sanchez while illegally utilizing District resources) the names of Breen, Friedman and McGinnis have been placed on the November 2026 ballot in order to keep long time independent businessman Gregory Swett from a run-off.

**Dr. Paul Rohart**

12. Dr. Rohart served as an emergency-room physician for the District pursuant to a written employment agreement or professional-services ("Agreement").

The Agreement provided that Dr. Rohart would render emergency medical services at the Hazel Hawkins Hospital under the terms stated in the Agreement.

13. At all relevant times, Hazel Hawkins was a participating hospital subject to the federal requirements governing emergency medical care and patient transfers.

14. In 2025, Rohart evaluated and treated Emergency Room Patient No. 1, who presented to the emergency department with an emergency medical condition requiring care beyond the capabilities available at the Hazel Hawkins Hospital.

15. Dr. Rohart determined that transfer of Patient No. 1 to a higher-level medical facility was medically necessary.

16. Dr. Rohart ordered and requested the transfer of Patient No. 1 to a higher level of care medical facility.

17. Dr. Rohart notified, or caused notice to be provided to, District management and responsible hospital personnel of the need for the requested transfer.

18. District management and responsible personnel failed or refused to take timely action necessary to effectuate the requested transfer of Patient No. 1.

19. Instead of Patient No. 1 being transferred as requested by Dr. Rohart, Patient No. 1 was placed into a wheelchair sat in a hallway until Patient No. 1 expired.

20. Thereafter, Dr. Rohart evaluated and treated Patient No. 2, who presented to the emergency department with an emergency medical condition requiring care beyond the capabilities available at the Hazel Hawkings Hospital.

21. Dr. Rohart determined that transfer of Patient No. 2 to a higher-level medical facility was medically necessary.

22. Dr. Rohart ordered and requested the transfer of Patient No. 2 to a higher level of care medical facility.

23. Dr. Rohart notified, or caused notice to be provided to, District management and responsible hospital personnel of the need for the requested transfer.

24. District management and responsible personnel failed or refused to take timely action necessary to effectuate the requested transfer of Patient No. 2.

25. Patient No. 2 was also placed into a wheel chair sat in the hallway until Patient No. 2 expired.

26. Dr. Rohart reported, complained about, and/or otherwise raised concerns regarding the District's failure to act on the transfer orders and the resulting risks to emergency patients, including through reports, complaints and communications.

27. Dr. Rohart's communications addressed patient safety, emergency medical care, compliance with emergency-transfer requirements, and the District's handling of emergency patients.

28. Dr. Rohart made the communications described above in good faith and as a citizen on matters of public concern, including the safety and treatment of emergency-room patients.

29. The District, through its CEO Mary Casillas, and her controlled Board, knew of Dr. Rohart's transfer orders, communications, and patient-safety concerns.

30. After Dr. Rohart raised these concerns, the CEO Mary Casillas, William Johnson and Devon Pack controlled District terminated, curtailed, or otherwise adversely affected Dr. Rohart's contractual employment relationship.

31. The District subsequently declined to renew Dr. Rohart's Agreement, or declined to offer renewal on reasonable and nonretaliatory terms.

32. The District represented that its termination and nonrenewal decisions were based on no

reason whatsoever or on pretextual grounds

33. The stated reasons were pretextual or non-existent at all. The District's termination and nonrenewal actions were substantially motivated by Dr. Rohart's transfer orders, reports, complaints, and patient-safety communications.

34. The District's actions were taken pursuant to, ratified by, or attributable to an official policy, practice, custom, decision, or final policymaking act of the District, including the actions of CEO Mary Casillas, Board Chair William Johnson and Assistant Board Chair Devon Pack. Not including Dr. Nick Gabriel.

35. As a direct and proximate result of the District's conduct, Dr. Rohart suffered loss of compensation, contractual benefits, professional opportunities, and other damages in an amount to be proven at trial.

36. Dr. Rohart timely presented any claim required to be presented to the District before bringing his California claims, or presentation was excused, waived, or otherwise satisfied.

**COUNT I - RETALIATION AGAINST HEALTH-CARE WHISTLEBLOWER IN VIOLATION OF CALIFORNIA HEALTH AND SAFETY CODE SECTION 1278.5**

37. Dr. Rohart incorporates by reference paragraphs 1 through 82 of this Complaint as though fully set forth herein.

38. Dr. Rohart was an employee, member of the medical staff, and/or other health care worker of Hazel Hawkins Hospital and the District.

39. Dr. Rohart presented grievances, complaints, reports, and communications to the District, responsible hospital personnel, medical-staff personnel, and/or governmental entities concerning the quality of emergency-patient care, medically necessary transfers, emergency-transfer requirements, and the District's failure to timely effectuate the transfer orders he issued for Patient No. 1 and Patient No. 2.

40. Dr. Rohart made those reports and communications in good faith after observing that Patient No. 1 and Patient No. 2 required care beyond the capabilities available at Hazel Hawkins Hospital, ordering transfers to higher-level facilities, and learning that responsible District personnel had

failed or refused to timely effectuate those transfers.

41. The District, CEO Mary Casillas, Board Chair William Johnson, Vice Chair Devon Pack, and other responsible District personnel had knowledge of Dr. Rohart's patient-safety reports, complaints, transfer orders, and communications.

42. Because Dr. Rohart made those protected reports and communications, Defendants terminated, curtailed, and/or otherwise adversely affected his contractual employment relationship and declined to renew his Agreement on reasonable and nonretaliatory terms.

43. Defendants' actions constituted discriminatory and retaliatory treatment, including unfavorable changes in the terms and conditions of Dr. Rohart's employment, contractual relationship, and professional privileges.

44. The retaliatory acts occurred on or about [DATE OR DATE RANGE], including within 120 days after Dr. Rohart's protected grievance, complaint, report, and/or communication of [DATE].

45. Defendants' retaliatory conduct was a substantial factor in causing Dr. Rohart to suffer lost compensation, contractual benefits, professional opportunities, and other damages in an amount to be proven at trial.

**COUNT II - RETALIATION AGAINST PHYSICIAN FOR REPORTING EMERGENCY-CARE AND TRANSFER VIOLATIONS IN VIOLATION OF CALIFORNIA HEALTH AND SAFETY CODE SECTION 1317.4**

46. Dr. Rohart incorporates by reference paragraphs 1 through 91 of this Complaint as though fully set forth herein.

47. Hazel Hawkins Hospital was a participating hospital subject to federal requirements governing emergency medical screening, stabilization, and transfers.

48. Federal law prohibits a participating hospital from penalizing or taking adverse action against a physician because the physician refuses to authorize the transfer of an unstabilized individual or against a hospital employee because the employee reports a violation of federal emergency-care requirements.42 USCS § 1395dd (2023).

49. Dr. Rohart reported in good faith apparent violations of emergency-care and patient-transfer requirements after he determined that Patient No. 1 and Patient No. 2 required transfer to higher-

level facilities, ordered those transfers, and District personnel failed or refused to timely effectuate them.

50. Dr. Rohart's reports concerned emergency medical care, patient safety, medically necessary transfers, and the District's handling of emergency patients.

51. Defendants knew of Dr. Rohart's reports and responded by terminating, curtailing, and/or otherwise adversely affecting his contractual employment relationship and by declining to renew his Agreement on reasonable and nonretaliatory terms.

52. Defendants' retaliatory actions were taken because Dr. Rohart made good-faith reports concerning apparent violations of emergency-care and transfer requirements.

53. As a direct and proximate result of Defendants' conduct, Dr. Rohart suffered loss of compensation, contractual benefits, professional opportunities, and other damages in an amount to be proven at trial.

**COUNT III — RETALIATION FOR PROTECTED SPEECH UNDER 42 U.S.C. § 1983**

54. Dr. Rohart incorporates by reference each and every other paragraph of this Complaint as though fully set forth herein.

55. Dr. Rohart spoke on matters of public concern when he reported and raised concerns about the District's failure to act on medically necessary transfer orders for emergency patients and the resulting risks to patient health and safety.

56. The District, acting under color of state law, subjected Dr. Rohart to adverse employment and contractual actions by terminating his Agreement and declining to renew it on reasonable terms.

57. Dr. Rohart's protected speech was a substantial or motivating factor in the District's adverse actions against him.

58. The District's stated reasons, if any, for its adverse actions were pretextual and did not constitute the actual reasons for the termination and nonrenewal decisions.

59. The District's retaliatory conduct deprived Dr. Rohart of rights secured by the First Amendment to the United States Constitution.

60. The District is liable because the retaliatory actions were undertaken, authorized, ratified, or

approved by District officials with final policymaking authority concerning Dr. Rohart's contractual relationship and emergency-department staffing.

61. The District's breach caused Dr. Rohart damages in an amount of not less than $100.00 million or to be proven at trial.

**COUNT IV — BREACH OF CONTRACT**

62. Dr. Rohart incorporates by reference each and every other paragraph of this Complaint as though fully set forth herein.

63. Dr. Rohart and the District entered into the Agreement, under which Dr. Rohart agreed to provide emergency medical services and the District agreed to provide compensation and other contractual rights and benefits.

64. Dr. Rohart performed his obligations under the Agreement, or his performance was excused by the District's conduct.

65. The District breached the Agreement by terminating Dr. Rohart's contractual relationship and/or failing to renew the Agreement in violation of its express and implied terms.

66. The District's breach caused Dr. Rohart damages in an amount of not less than $100.00 million or to be proven at trial.

**COUNT V — BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

67. Dr. Rohart incorporates by reference each and every other paragraph of this Complaint as though fully set forth herein.

68. The Agreement contained an implied covenant that neither party would do anything to unfairly interfere with the other party's right to receive the benefits of the Agreement.

69. The District acted in bad faith by using pretextual reasons to terminate Dr. Rohart's Agreement and by refusing to renew the Agreement on reasonable, nonretaliatory terms because Dr. Rohart raised patient-safety and emergency-transfer concerns.

70. The District's conduct unfairly deprived Dr. Rohart of the compensation, professional opportunities, and other benefits reasonably expected under the Agreement.

71. As a direct and proximate result, Dr. Rohart suffered damages in an amount of not less than $100.00 million or to be proven at trial.

**COUNT VI — WRONGFUL TERMINATION IN VIOLATION OF CALIFORNIA PUBLIC POLICY**

72. Dr. Rohart incorporates by reference each and every other paragraph of this Complaint as though fully set forth herein.

73. California law prohibits a health facility from discriminating or retaliating against an employee, member of the medical staff, or other health care worker for presenting a grievance, complaint, or report concerning quality of care, services, or conditions at the facility, or for participating in an investigation or proceeding concerning those matters. [California Health & Saf Code § 1278.5 (2020).]

74. California law further prohibits a hospital, government agency, or person from retaliating against or otherwise injuring a physician for reporting in good faith an apparent violation of emergency-care and transfer requirements. [California Health & Saf Code § 1317.4.]

75. Dr. Rohart's reports and communications concerning the District's failure to act on medically necessary transfer orders furthered the public policies embodied in California's patient-safety, emergency-care, and anti-retaliation laws.

76. The District terminated Dr. Rohart's contractual employment relationship and declined to renew his Agreement because he engaged in conduct protected by those public policies.

77. The District's conduct was wrongful and caused Dr. Rohart damages in an amount of not less than $100.00 million or to be proven at trial.

**COUNT VII — CIVIL RICO: CONDUCT OF AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY**

**Against Defendants Mary Casillas, William Johnson, Devon Pack, Josie Sanchez, and Other RICO Defendants in their individual capacities**

78. Dr. Rohart incorporates by reference each and every other paragraph of this Complaint as though fully set forth herein.

79. This Count is brought under 18 U.S.C. § 1962(c). Section 1962(c) prohibits a person employed by or associated with an enterprise affecting interstate commerce from conducting or participating in the enterprise's affairs through a pattern of racketeering activity.

80. At all relevant times, Defendants Mary Casillas, William Johnson, Devon Pack, Josie Sanchez were persons capable of holding a legal or beneficial interest in property.

81. The enterprise was an association-in-fact consisting of the individual Defendants and other Doe Defendants, together with the San Benito Health Care District and Hazel Hawkins Hospital as the instrumentalities through which the enterprise operated (the "Enterprise").

82. The Enterprise had the common purposes of:

- preserving the individual Defendants' control over District and hospital operations;
- suppressing or retaliating against physicians and others who reported patient-safety, emergency-transfer, financial, and regulatory concerns;
- using the District's bankruptcy process to advance the Enterprise's interests, including terminating the union contract with registered nurses, selling the Hazel Hawkins Hospital to a third party and creating a golden parachute payout to the CEO Mary Casillas of $450,000.
- concealing material information from the Bankruptcy Court, creditors, employees, physicians, regulators, and the public; and
- obtaining or retaining money, contractual advantages, employment-related control, or other property and financial benefits for the Enterprise's members.

83. The Enterprise functioned as a continuing unit from at least the appointment of Mary Casillas as CEO of the San Benito Health Care District through to the pretextual terminations of Drs. Rohart, Gabriel and the illegal termination of Dr. Gabriel from the San Benito Health Care District Board. Its members had ongoing relationships, distinct roles, and coordinated responsibilities in advancing the Enterprise's purposes.

84. The Enterprise affected interstate commerce through the District's operation of Hazel Hawkins Hospital; the Hospital's treatment of patients; the procurement of medical services, supplies, and professional services; payments to consultants and legal professionals;

communications and transactions conducted by interstate mail and wire; and the Chapter 9 bankruptcy proceeding.

85. In 2025, Dr. Rohart evaluated and treated two emergency-department patients who required transfer to higher-level facilities; he ordered and requested those transfers, but District management and responsible personnel allegedly failed or refused to timely effectuate them, and each patient died after remaining in a hallway.

86. Dr. Rohart reported and raised concerns about the failures to effectuate medically necessary transfers, patient safety, emergency medical care, emergency-transfer requirements, and the District's handling of emergency patients.

87. After Dr. Rohart made those reports and communications, Casillas, Johnson, Pack, and other persons acting for the District terminated, curtailed, or otherwise adversely affected Dr. Rohart's contractual relationship with the District and declined to renew his Agreement on reasonable and nonretaliatory terms.

88. Further, the District filed a Chapter 9 bankruptcy petition that allegedly sought to nullify the applicable nurses' union contract and facilitate a contemplated sale of Hazel Hawkins Hospital.

89. Defendants conducted and participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity, including the following predicate acts:

- Defendants, and each of them, knowingly made, caused to be made, or filed a false declaration or declarations, schedule, statement, certification, or other document under penalty of perjury in the District's Chapter 9 proceeding, including the representation that the San Benito Health Care District was insolvent, despite possessing or having access to contrary financial information. Board packets, reports, cash flow reports and/or other documents.
- Defendants, and each of them, knowingly concealed from the Bankruptcy Court, creditors, or other persons entitled to receive the information certain financial information, records, and/or material facts in connection with the District's Chapter 9 proceeding.
- Defendants, and each of them, used interstate wire communications to transmit, cause to be transmitted, or procure the transmission of emails and/or fraudulent statements or documents for the

purpose of executing or concealing the Enterprise's scheme to defraud.

- Defendants, and each of them, caused emails and/or fraudulent statements or documents for the purpose of executing or concealing the Enterprise's scheme to defraud to be sent through the United States mail or a commercial interstate carrier to the United States Bankruptcy Court, and/or to and from each other, for the purpose of executing or concealing the Enterprise's scheme to defraud.
- After Dr. Rohart provided truthful information concerning a possible federal and/or state offense to federal and/or state law enforcement officers and/or agencies, Defendants, and each of them, took harmful action against Dr. Rohart, including termination, nonrenewal, reduction of shifts, exclusion from staff, and/or other adverse actions, in retaliation for that reporting.
- Defendants, and each of them, knowingly withheld, altered, destroyed, concealed, or caused the withholding, alteration, destruction, or concealment of documents and records with the intent to impair its availability or integrity for use in the United States Bankruptcy proceedings, federal and/or state investigations, and/or other official proceedings.

90. The predicate acts alleged above were related because they had common participants, common purposes, common victims, common methods of operation, and the common objective of preserving the Enterprise's control and concealing or advancing the Enterprise's unlawful scheme.

91. The predicate acts constituted a pattern of racketeering activity because they occurred over a substantial period, involved multiple unlawful acts, and posed a continuing threat that the Enterprise would repeat similar conduct against physicians, employees, creditors, union representatives, regulators, patients, and other persons who might oppose or expose the Enterprise's activities. A pattern of racketeering activity requires at least two qualifying acts occurring within the statutory period. [18 USCS § 1961 (2022)]

92. Defendants Casillas, Johnson, Pack, Sanchez, and other individual RICO Defendants each knowingly conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity alleged above.

93. As a direct and foreseeable result of the retaliatory racketeering acts directed at Dr. Rohart,

Plaintiff lost compensation, contractual benefits, professional opportunities, and other business or property interests in the amount of $100.00 million or to be proven at trial.

94. Plaintiff's injuries were directly caused by the Enterprise's retaliatory acts against him, including the termination, curtailment, and nonrenewal of his contractual employment relationship after he provided the reports identified in paragraph 70.

**COUNT VIII — CIVIL RICO CONSPIRACY**

**Against Defendants Mary Casillas, William Johnson, Devon Pack, Josie Sanchez, and Other Individual RICO Defendants, in their individual capacities**

95. Plaintiff incorporates by reference paragraphs 1 through 75 of this Complaint as though fully set forth herein.

96. This Count is brought under 18 U.S.C. § 1962(d). Section 1962(d) prohibits a conspiracy to violate 18 U.S.C. § 1962(a), (b), or (c).

97. Defendants Casillas, Johnson, Pack, Sanchez and other individual RICO Defendants knowingly agreed that one or more members of the Enterprise would conduct or participate in the Enterprise's affairs through the pattern of racketeering activity alleged in Count V.

98. The agreement was evidenced by, among other things:

- coordinated actions concerning the fraudulent and/or misleading United States Bankruptcy Court filings, financial disclosures, union contracts, and/or sale transactions;
- communications concerning the fraudulent and/or misleading United States Bankruptcy Court filings, financial disclosures, union contracts, and/or sale transactions;
- the allocation of responsibilities among Enterprise members for the fraudulent and/or misleading United States Bankruptcy Court filings, financial disclosures, union contracts, and/or sale transactions;
- the retention, direction, or payment of the private investigator or other agents to carry-out the Enterprise's objectives; and
- the coordinated termination, curtailment, nonrenewal, or other retaliation against Dr. Rohart after his reports concerning patient safety and emergency transfers.

99. Each Defendant knowingly agreed to facilitate, further, or conceal the Enterprise's unlawful objectives and knowingly agreed that at least two acts of racketeering activity would be committed in furtherance of those objectives.

100. In furtherance of the conspiracy, one or more Defendants committed the retaliatory racketeering acts that directly injured Dr. Rohart, including those acts, facts and events set forth above.

101. As a direct and proximate result of Defendants' RICO conspiracy and the retaliatory racketeering acts committed in furtherance of that conspiracy, Plaintiff sustained injury to his business or property, including lost compensation, contractual benefits, professional opportunities, and consequential economic losses, in the amount of $100.00 or an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Robert Rohart, M.D., requests judgment against each and every defendant as follows:

A. For general, economic, and consequential damages in the amount of $100.00 million or as according to proof;

B. For damages for lost compensation, contractual benefits, and professional opportunities in the amount of $100.00 million or as according to proof;

C. For declaratory relief that the District's retaliatory conduct violated Dr. Rohart's rights under the First Amendment and 42 U.S.C. § 1983;

D. For injunctive relief prohibiting the District from continuing to retaliate against Dr. Rohart for protected patient-safety communications;

E. For prejudgment and post-judgment interest as allowed by law;

F. For attorneys' fees and costs of suit; and

G. For such other and further relief as the Court deems just and proper.

H. Additionally, Plaintiff Rohart seeks RICO damages against the individual defendants as set forth herein.

**JURY DEMAND**

Plaintiff Robert Rohart, M.D., demands a trial by jury on all issues so triable.

LAWRENCE DANIELS LAW GROUP, P.C.

Dated: October 9, 2026 BY: ***/s/ Lawrence N Daniels***

______________________________________

Lawrence N Daniels, Esq.
Lawrence Daniels Law Group, PC